Longitude-Latitude (Rev. 4/10)
SLT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - - - - x
:
IN THE MATTER OF AN APPLICATION OF THE :
UNITED STATES OF AMERICA FOR AN ORDER : AFFIDAVIT IN SUPPORT
AUTHORIZING THE INSTALLATION, USE, : OF APPLICATION
MONITORING, REPAIR, REPLACEMENT AND :
REMOVAL OF MOBILE GPS TRACKING DEVICES :
IN OR ON: A BLACK 2009 INFINITI G37 :
SEDAN, BEARING NEW YORK LICENSE PLATE :
NUMBER DXS2234, VEHICLE IDENTIFICATION :
NUMBER JNKCV64F19M653411 AND :
REGISTERED TO GEORGE AWN, 137 PRESCUTT :
AVENUE, STATEN ISLAND, NEW YORK; AND A :
BLACK 2007 MERCEDES BENZ ML CLASS SUV, :
BEARING NEW YORK LICENSE PLATE NUMBER :
DXT1989, VEHICLE IDENTIFICATION NUMBER :
4JGBB86E77A238206 AND REGISTERED TO :
JOHN P. BUONOCORE, 68 KEUNE STREET, :
STATEN ISLAND, NEW YORK :
:
- - - - - - - - - - - - - - - - - - - - - x

EASTERN DISTRICT OF NEW YORK, SS:

       1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Detective of the Nassau County Police Department, duly appointed according to law and acting as such. I have been a Nassau County Detective for approximately five years and am currently assigned to the Long Island District Office of the Drug Enforcement Administration ("DEA") Task Force (the "Task Force"), where I am tasked with investigating

narcotics trafficking, money laundering and other offenses. I am cross-designated as a Special Agent of the Drug Enforcement Administration Task Force.

2. During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of numerous taped conversations and records of drug traffickers. Through my training, education and experience -- which has included numerous instances of debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

3. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41(b), Title 18, United States Code, Section 3117, and Title 28, United States Code, Section 1651, authorizing the installation of Global Positioning System ("GPS") mobile tracking devices by trained technicians, or authorized representatives of the of the DEA in or on: (i) A BLACK 2009 INFINITI G37 SEDAN,

2

BEARING NEW YORK LICENSE PLATE NUMBER DXS2234, VEHICLE IDENTIFICATION NUMBER JNKCV64F19M653411 AND REGISTERED TO GEORGE AWN, 137 PRESCUTT AVENUE, STATEN ISLAND, NEW YORK (The "SUBJECT INFINITI"); AND (ii) A BLACK 2007 MERCEDES BENZ ML CLASS SUV, BEARING NEW YORK LICENSE PLATE NUMBER DXT1989, VEHICLE IDENTIFICATION NUMBER 4JGBB86E77A238206 AND REGISTERED TO JOHN P. BUONOCORE, 68 KEUNE STREET, STATEN ISLAND, NEW YORK (the "SUBJECT MERCEDES") (collectively, the "SUBJECT VEHICLES"), currently located in the Eastern District of New York, in order to monitor the movement of the SUBJECT VEHICLES (the "REQUESTED INFORMATION"), for a period of forty-five (45) days.

    4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise

indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the installation of GPS mobile tracking devices, I have not included details of every aspect of the investigation.

5. Probable cause exists to believe that the REQUESTED INFORMATION will constitute or lead to evidence of offenses involving narcotics trafficking and money laundering, in violation of 21 U.S.C. §§ 841, 846, 952 and 963, and 18 U.S.C. § 1956 (the "SUBJECT OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offenses.

6. For the reasons set out in this affidavit, there is probable cause to believe that the SUBJECT OFFENSES have been committed, are being committed, and will continue to be committed by individuals that are using the SUBJECT VEHICLES to commit such offenses.

## PROBABLE CAUSE

7. For more than three years, the DEA has been investigating several large-scale international drug trafficking organizations based in Montreal, Canada that have formed a consortium along with a number of marijuana brokers and distributors in the United States and are actively working together to define the various territories for drug distribution set prices and provide transportation for drug smuggling venture (the "Consortium"). One of the principal members within the

4

Consortium has been identified as Jimmy COURNOYER, also known as "Cosmo." The investigation has revealed that in just the past two or three years COURNOYER coordinated the importation and distribution of more than 30,000 kilograms of hydroponic marijuana into the United States from Canada. COURNOYER also arranged to transport vast quantities of marijuana proceeds from New York to California on behalf of the Consortium. The marijuana proceeds were then used to purchase cocaine that was exported into Canada for distribution. This trade-based money laundering scheme resulted in enormous profits.

8. During the course of the investigation, DEA agents received information about the Consortium from a confidential informant ("CW1") whose information has proven to be reliable and has led to multiple arrests and seizures of drugs and drug proceeds, including the recent seizure of approximately 50 kilograms of cocaine and $1,000,000. In sum and substance, CW1 stated that COURNOYER headed a Montreal-based drug trafficking organization that imported vast quantities of marijuana into the New York area for distribution and then bulk transported the cash proceeds from marijuana sales to California, where it was used to purchase kilogram quantities of cocaine to be smuggled into Canada.

9. During the course of the investigation, the DEA was able to use an undercover agent (the "UC") to infiltrate

COURNOYER's organization by posing as a bulk cash transporter. In May 2011, the UC was instructed by members of the Consortium to transport approximately $150,000.00 in United States currency from New York to California. The UC was further instructed that he would receive a call from the New York marijuana distributor to arrange for the money drop. On May 6, 2011, the UC received a telephone call from an unidentified male caller (the "UM"). The UM and the UC arranged to meet in Brooklyn, New York to conduct the money exchange. During this call, the UC advised the UM that he/she would call the UM again later to determine the exact location. Several hours later, the UC arrived at the prearranged meeting location in the vicinity of Atlantic Avenue and Henry Street in Brooklyn. The UC then placed a call to the UM, who stated that he was on the other side of the tunnel and would be at the location shortly. At this time, DEA agents conducting surveillance in the vicinity of 57 Rapelye Street observed an unidentified white male exit the premises carrying a yellow plastic bag, which he placed into the trunk of the SUBJECT INFINITI, before driving away in the direction of the prearranged meeting spot.

  10. A short time later, DEA agents observed the SUBJECT INFINITI arrive at the prearranged meeting location and park just in front of the vehicle being driven by the UC. The same unidentified male observed at 57 Rapelye Street exited the

6

SUBJECT INFINITI and proceeded to take a weighted purple plastic bag out of the trunk. The male then walked to the front passenger side of the UC's vehicle and placed the bag on the front passenger seat of the vehicle. When DEA agents later opened the purple bag, they discovered a yellow plastic bag inside that contained approximately $150,000.00 in United States currency.

11. DEA agents continued to follow the UM as he drove away from the meeting spot back to Rapelye Street. The UM then parked the SUBJECT INFINITI on the street directly across from 57 Rapelye Street. DEA agents subsequently walked the perimeter of 57 Rapelye Street and detected a strong odor of marijuana emanating from the premises.

12. On or about May 19, 2011, the UC and the UM arranged to conduct another money pickup in Brooklyn, New York. After the UC set up the meeting, DEA agents conducting surveillance at 57 Rapelye Street observed the UM pull up to the location driving the SUBJECT MERCEDES. A short time later, DEA agents observed an unidentified female (the "UF") arrive at the location driving the SUBJECT INFINITI. The UF exited the SUBJECT INFINITI and walked to the driver's side window of the SUBJECT MERCEDES carrying a large bag. After engaging in a brief conversation with the UF, the UM then exited the SUBJECT MERCEDES and opened the trunk of the vehicle. DEA agents observed the UM

7

open the spare tire hatch in the trunk of the SUBJECT MERCEDES, from which he removed a squared-off green bag that appeared to be heavily-weighted. The UM then carried the weighted green bag into 57 Rapelye Street.

13. Several minutes later, DEA agents observed the UM exit 57 Rapelye Street and enter the SUBJECT INFINITI. Agents followed the UM as he drove the SUBJECT INFINITI to a prearranged meeting location at the corner of Atlantic Avenue and Henry Street. Upon arriving at the meeting location, the UM exited the SUBJECT INFINITI carrying a weighted green bag. The UM then placed the green bag inside the trunk of the UC's car before driving the SUBJECT INFINITI back to 57 Rapelye Street. When DEA agents later opened the green bag, they discovered approximately $226,000.00 in United States currency.

14. Based on the foregoing, there is probable cause to believe that the SUBJECT VEHICLES are being used by the SUBJECTS and that the REQUESTED INFORMATION will lead to evidence regarding the drug trafficking and money laundering activities described above. The REQUESTED INFORMATION is necessary to assist law enforcement agents in conducting surveillance; identifying co-conspirators; determining the location of possible stash houses; and ultimately effecting arrest warrants.

**GPS DATA**

18. I have confirmed with DEA technicians, that the GPS mobile tracking devices may be installed within the SUBJECT VEHICLES, and the devices, once installed and rendered operable, will generate a signal that fixes the geographic position of the SUBJECT VEHICLES. The signals are then read by a satellite that transmits the location information in a form that a DEA computer program is able to calculate and project upon a map.

**GROUNDS FOR DELAYING NOTICE**

19. Pursuant to 18 U.S.C. § 3103a and 18 U.S.C. § 2705(a)(2), and to the extent applicable, the government seeks authorization to delay notification to the registered owners of the SUBJECT VEHICLES until 30 days from the date on which the order proposed herein expires. The grounds for this request are as follows: the investigation of the SUBJECTS is in its early stages and is expected to continue for several months. Disclosure of the warrant at this time would cause premature termination of the investigation into the SUBJECTS and their organization, and would cause members of the organization to cease using their vehicles and to potentially flee.

**AUTHORIZATION REQUESTED**

20. Based on the foregoing, your affiant believes tha the REQUESTED INFORMATION will lead to evidence of the SUBJECTS' criminal activities to include the transportation or distributio

9

of narcotics and narcotics related proceeds, as well as to the identification of individuals who are engaged in the commission of those and related crimes. The REQUESTED INFORMATION is necessary in order to determine the exact location of the SUBJECT VEHICLES so that law enforcement agents can: (a) monitor the movements of the SUBJECT VEHICLES when they moves about, and/or depart the Eastern District of New York; (b) track the SUBJECT VEHICLES's travel without the need for close proximity vehicle surveillance; and (c) identify locations where the SUBJECT VEHICLES are taken to be loaded with narcotics and/or narcotics proceeds, as well as to identify the final locations where narcotics or narcotics proceeds are delivered. This will allow law enforcement agents to observe and potentially arrest those individuals, including The SUBJECTS and others who will use the SUBJECT VEHICLES to commit the TARGET OFFENSES.

21. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41(b), Title 18, United States Code, Section 3117, and Title 28, United States Code, Section 1651, it is requested that the Court issue a warrant and Order authorizing the installation and use of GPS mobile tracking devices in or on the SUBJECT VEHICLES by trained DEA technicians or by an individual or individuals working under their direct supervision in order to monitor the movement of the SUBJECT VEHICLES for a period of forty-five (45) days.

22. IT IS FURTHER REQUESTED that the Court authorize technicians and agents with the DEA or their authorized representatives to monitor the signals from a GPS mobile tracking device installed within the SUBJECT VEHICLES for a period of forty-five (45) days following the issuance of the Court's Order, including signals produced inside private locations, and other places not open to the public or visual surveillance, and signals produced in the event that the SUBJECT VEHICLE leaves the Eastern District of New York, but remains within the United States.

23. IT IS FURTHER REQUESTED that the Court authorize technicians and agents with the DEA, or an individual or individuals operating under their direct supervision, to surreptitiously access the SUBJECT VEHICLES in the Eastern District of New York in order to install the GPS mobile tracking device and to repair, replace or remove the GPS mobile tracking device, including in the event the SUBJECT VEHICLES travel to private locations, other places not open to the public or visual surveillance, and in the event that the SUBJECT VEHICLES leave the Eastern District of New York, but remain within the United States.

24. IT IS FURTHER REQUESTED that this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the

safety of agents and others, except that working copies should be made available to the United States Attorney's Office, the DEA, and any other law enforcement agency designated by the United States Attorney's Office, and that the Court require the return of this warrant - and any notification required under 18 U.S.C. § 3103a and 18 U.S.C. § 2705(a)(2) - to occur within 30 days after the use of the tracking device has ended unless extended by the Court for good cause shown.

_____
Detective Richard Kershow
Drug Enforcement Administration
Task Force

Sworn to before me this
20th day of May 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

12

SLT

- - - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING THE INSTALLATION,
USE, MONITORING, REPAIR, REPLACEMENT
AND REMOVAL OF MOBILE GPS TRACKING
DEVICES IN OR ON: A BLACK 2009
INFINITI G37 SEDAN, BEARING NEW YORK
LICENSE PLATE NUMBER DXS2234,
VEHICLE IDENTIFICATION NUMBER
JNKCV64F19M653411 AND REGISTERED TO
GEORGE AWN, 137 PRESCUTT AVENUE,
STATEN ISLAND, NEW YORK; AND A BLACK
2007 MERCEDES BENZ ML CLASS SUV,
BEARING NEW YORK LICENSE PLATE
NUMBER DXT1989, VEHICLE
IDENTIFICATION NUMBER
4JGBB86E77A238206 AND REGISTERED TO
JOHN P. BUONOCORE, 68 KEUNE STREET,
STATEN ISLAND, NEW YORK

**SEALED ORDER**

Misc.

- - - - - - - - - - - - - - - - - - - -X

Application having been made by the United States for an Order pursuant to 18 U.S.C. § 3117, 28 U.S.C. § 1651, and Federal Rule of Criminal Procedure 41, authorizing the installation and monitoring of Global Positioning System ("GPS") mobile tracking devices to be installed by trained technicians, or authorized representatives of the DEA in or on: (i) A BLACK 2009 INFINITI G37 SEDAN, BEARING NEW YORK LICENSE PLATE NUMBER DXS2234, VEHICLE IDENTIFICATION NUMBER JNKCV64F19M653411 AND REGISTERED TO GEORGE AWN, 137 PRESCUTT AVENUE, STATEN ISLAND, NEW YORK (The "SUBJECT INFINITI"); AND (ii) A BLACK 2007 MERCEDES BENZ ML CLASS SUV, BEARING NEW YORK LICENSE PLATE NUMBER DXT1989, VEHICLE IDENTIFICATION NUMBER 4JGBB86E77A238206 AND REGISTERED TO JOHN P. BUONOCORE, 68 KEUNE STREET, STATEN ISLAND, NEW YORK (the

"SUBJECT MERCEDES") (collectively, the "SUBJECT VEHICLES"), currently located in the Eastern District of New York, in order to monitor the movement of the SUBJECT VEHICLES (the "REQUESTED INFORMATION"), for a period of forty-five (45) days;

The Court finds that there is probable cause to believe that the Requested Information will lead to evidence of violations of Title 21, United States Code, Sections 841, 846, 952 and 963; and Title 18 United States Code, Section 1956, among other offenses, as well as to the identification of individuals who are engaged in the commission of these offenses.

IT IS HEREBY ORDERED pursuant to 18 U.S.C. § 3117, 28 U.S.C. § 1651, and Federal Rule of Criminal Procedure 41, that technicians and agents with the DEA may monitor the signals from the GPS mobile tracking devices installed within the SUBJECT VEHICLES for a period of forty-five (45) days following the issuance of the Court's Order, including signals produced inside private locations, and other places not open to the public or visual surveillance, and signals produced in the event that the SUBJECT VEHICLES leave the Eastern District of New York, but remain within the United States.

It is further ORDERED that technicians and agents with the DEA or an individual or individuals operating under their direct supervision to surreptitiously access the SUBJECT VEHICLES in the Eastern District of New York in order to repair, replace

or remove the GPS mobile tracking device including in the event that the SUBJECT VEHICLES travel to private locations, other places not open to the public or visual surveillance, and in the event that the SUBJECT VEHICLES leave the Eastern District of New York, but remain within the United States.

It is further ORDERED that the Court's Order and the accompanying Affidavit submitted in support thereof, as they reveal an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the U.S. Magistrate Judge on criminal duty in the Eastern District of New York within 30 days after the use of the tracking device has ended as required by law. Notice of the execution of this warrant otherwise required by Fed. R. Crim. P. 41 may be extended by the Court for good cause shown.

It is further ORDERED that, pursuant to 18 U.S.C. §§ 2705(a)(2) and 3103(a), service of notice may be delayed for a period of thirty (30) days after the use of the tracking device has ended unless extended by the Court for good cause shown.

Dated:   Brooklyn, New York
         May 20, 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
for the
Eastern District of New York

In the Matter of the Tracking of  )
*entify the person, property, or object to be tracked*  )   Case No. **366**
CK 2009 INFINITI G37 SEDAN, BEARING NEW YORK  )
LICENSE PLATE NUMBER DXS2234, VEHICLE  )
TIFICATION NUMBER JNKCV64F19M653411; AND A  )
K 2007 MERCEDES BENZ ML CLASS SUV, BEARING  )
NEW YORK LICENSE PLATE NUMBER  )

## TRACKING WARRANT

Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason ·
 e that the person, property, or object described above has been involved in and likely will continue to be involv
 criminal activity identified in the application, and ☑ is located in this district;   ☐ is not now located in this
 :t, but will be at execution;   ☐ the activity in this district relates to domestic or international terrorism;   ☐ othe

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*:k the appropriate box)*    ☐ using the object      ☑ installing and using a tracking device
 nitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for
 ig a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without appr
 wledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the
 ng device: A BLACK 2009 INFINITI G37 SEDAN, BEARING NEW YORK LICENSE PLATE NUMBER DXS223⋅
VEHICLE IDENTIFICATION NUMBER JNKCV64F19M653411; AND A BLACK 2007 MERCEDES
BENZ ML CLASS SUV, BEARING NEW YORK LICENSE PLATE NUMBER DXT1989, VEHICLE
IDENTIFICATION NUMBER 4JGBB86E77A238206

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking dev
 i ten days from the date of this order and may continue use for 45 days. The tracking may occur within this dist
 ither district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

o the vehicle described above     ☐ onto the private property described above

the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.)*.  ☑ at any time of day or night because good cause has been establisl

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant mu:
 eturn it to United States Magistrate Judge *(name)* _____ and — unless delayed notic
 horized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
 and authorize the officer executing this warrant to delay notice to the person who, or whose property or object,
 e tracked *(check the appropriate box)*   ☑ for  30  days *(not to exceed 30)*
        ☐ until, the facts justifying, the later specific date of _____

and time issued: 05/20/2011 at 3:59 pm        _____
                                                *Judge's signature*

ind state: Brooklyn, NY  _____        _____
                                                *Printed name and title*